UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

JOSEPH HENRY and MICHAEL MALINKY,
suing on behalf of all participants in, and
beneficiaries of, the CommutAir Employee
Stock Ownership Plan, similarly situated
and in the right of the CommutAir Employee
Stock Ownership Plan,

                            Plaintiffs,

- vs -                                    1:04-CV-201

ANTONY von ELBE; JOHN ARTHUR
SULLIVAN, JR.; and ERNEST JAMES
DROLLETTE, and U.S. TRUST COMPANY
OF CALIFORNIA, N.A.,

                            Defendants.

--------------------------------

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

AUG 25 2005

LAWRENCE K. BAERMAN, Clerk
UTICA

APPEARANCES:

DeGRAFF, FOY, KUNZ & DEVINE, LLP
Attorneys for Plaintiffs
90 State Street
Albany, New York 12207

SHAYNE & GREENWALD CO., L.P.A.
Attorneys for Plaintiffs
221 South High Street
Columbus, Ohio 43215

BOND, SCHOENECK & KING, PLLC
Attorneys for individual Defendants
One Lincoln Center
Syracuse, New York 13202

GROOM LAW GROUP CHARTERED
Attorneys for Defendant U.S. Trust
   Company of California, N.A.
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

OF COUNSEL:

TERENCE J. DEVINE, ESQ.


GARY D. GREENWALD, ESQ.
ANNE MARIE LA BUE, ESQ.


EDWARD R. CONAN, ESQ.
SUZANNE O. GALBATO, ESQ.


EDWARD A. SCALLET, ESQ.
ROBERT P. GALLAGHER, ESQ.
LARS C. GOLUMBIC, ESQ.

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

### I. INTRODUCTION

In January 2004, plaintiffs Joseph Henry and Michael Malinky ("plaintiffs") commenced this action for breach of contract against defendants Antony von Elbe, John Arthur Sullivan, Jr., and Ernest James Drollette (collectively, "sellers") in New York State Supreme Court, Clinton County. Defendants removed the action to federal court based on diversity jurisdiction. (Docket No. 1.)[1] There are two motions pending pursuant to Fed. R. Civ. P. 56: (1) plaintiffs' motion for partial summary judgment; and (2) sellers' motion for summary judgment. Oral argument was heard on May 12, 2005 in Utica, New York. Decision was reserved.[2]

### II. FACTS

In 1994, sellers owned Champlain Enterprises, Inc., d/b/a CommutAir ("CommutAir"), a regional commuter air service. In an effort to raise capital and expand an

---

[1] On June 28, 2004, an Amended Complaint was filed including U.S. Trust Company of California, N.A.. as an additional defendant.

[2] Pursuant to leave to amend granted by Magistrate Judge Treece, plaintiff filed a Second Amended Complaint on August 16, 2005 adding three causes of action against defendant US Trust. (Docket No. 51, Second Amended Complaint.) In Count Two plaintiffs allege that US Trust engaged in a transaction prohibited by ERISA in settling the amount owed by sellers pursuant to Section 5.7. Id. at ¶¶ 35, 36. In Count Three plaintiffs allege that US Trust must return indemnity payments it received to cover its legal defense in Henry I, a related case, wherein it was found to have committed acts of negligence. Id. at ¶ 40 ; see Henry v. Champlain Enters., 288 F. Supp. 2d 202 (N.D.N.Y. 2003). In Count Four plaintiffs assert that they are entitled to recover compensation paid to US Trust during the period of its "infidelity and faithlessness" during the course of events that led to this case and Henry I. (Docket No. 51, Second Amended Complaint ¶ 50.)
   US Trust has appealed Judge Treece's order granting leave to amend. (Docket No. 53.) The added claims are not relevant to this determination as the instant motions concern only the breach of contract claim against the sellers. This claim will be referred to as Count One as it is listed in the Amended Complaint and in relation to the claims listed in the Second Amended Complaint. The parties have adopted this nomenclature and it is followed for ease of discussion. As noted, an appeal is pending regarding Counts Two through Four of the Second Amended Complaint, reference to Count One is not intended to imply any particular view of the pending appeal.

employee profit-sharing program they established an employee pension benefit plan known as the CommutAir Employee Stock Ownership Plan ("ESOP"). The arrangement involved ESOP acquiring about 30% of CommutAir, which was determined to be 540,000 shares of convertible, preferred stock. The CommutAir Employee Stock Ownership Trust ("ESOT") was established for the purposes of buying and holding the CommutAir stock.

Defendant U.S. Trust Company of California, N.A. ("US Trust") served as the independent trustee for the ESOT. US Trust determined to purchase the shares of CommutAir for $60 million. On March 15, 1994, the transaction was memorialized in a Stock Purchase Agreement (SPA) between CommuntAir, the sellers, and US Trust.

Section 5.7 of the SPA provides:

5.7 <u>Adjustment of Purchase Price</u>. In the event of a final determination by the Internal Revenue Service, the Department of Labor, a court of competent jurisdiction or otherwise that the fair market value of the shares of ESOP Convertible Preferred Stock as of the Closing is less than the purchase Price, the Sellers, jointly and severally, shall pay to the Trust an amount equal to the difference between the Purchase Prices and said fair market value for the such shares of ESOP Convertible Preferred Stock, plus interest at a reasonable rate form [sic] the date of Closing to the date of such payment. Such payment may be made either in cash, or in the form of shares, valued in accordance with their actual fair market value as of the Closing.

(Docket No. 15, Amended Complaint Ex. A at 16.)

In 1997 or 1998, the IRS audited CommutAir for the tax years 1994 through 1996. In August 1998, the IRS sent CommutAir a notice of deficiency claiming that the purchase price paid by the ESOT exceeded the fair market value of the convertible preferred stock. CommutAir protested the deficiency notice in the United States Tax Court. On September 27, 1999, the Tax Court entered decisions stipulated to by the parties which settled the dispute. "[A]ll of these stipulated amounts were calculated on the basis of a $ 51

million transaction." Henry v. Champlain Enters., 288 F. Supp. 2d 202, 216 (N.D.N.Y. 2003) ("Henry I".)

Plaintiffs Joseph Henry and Henry Malinky are participants in the CommutAir ESOP and beneficiaries of the CommutAir ESOT. On November 1, 2001, they brought suit, referred to as Henry I, against CommutAir, the sellers, two members of the ESOP Administrative Committee and US Trust. Id. at 208. Both sides filed for partial summary judgment on Count One of that complaint. Count One alleged four separate basis for finding that defendants breached fiduciary duties. Id.

Under the Third Basis of Count One in Henry I, plaintiffs alleged that defendants failed "to pursue and demand payment from the sellers pursuant to Section 5.7 after the September 1999 settlement with the IRS." Id. at 217. As noted above, in order for Section 5.7 to be breached, there had to have been a "final determination by the Internal Revenue Service, the Department of Labor, a court of competent jurisdiction or otherwise," which would trigger the requirement of reimbursement. (Docket No. 15, Amended Complaint, Ex. A, 16.) In considering liability for breaching Section 5.7, it was concluded that the IRS' agreement to the stipulated Tax Court Orders constituted an IRS' "final determination" that the market value of the stock acquired by the ESOT in 1994 was less than the amount paid and Section 5.7 should have been invoked. Henry I, 288 F. Supp. 2d at 228.

Turning to the question of responsibility for the alleged breach, the sellers could not be held liable because they were not fiduciaries in relation to the trust. Id. at 229. US Trust and the two members of the ESOP Administrative Committee could be held liable as persons with responsibility for the alleged breach except that plaintiffs had not demonstrated any loss occasioned by the breach. Id. at 230. While dismissing this portion of Count One altogether,

it was noted that plaintiffs were not barred from asserting a breach on contract claim against the sellers. Id.

That decision was issued in October of 2003. By letter dated January 12, 2004, the ESOP Administrative Committee recommended that US Trust, as trustee, seek repayment from the sellers pursuant to Section 5.7. (Docket No. 40, Owens Dec. Ex. 2.) On January 20, 2004, US Trust demanded that sellers reimburse the ESOP in accordance with Section 5.7, which consisted of the $9 million difference between the original $60 million purchase price and $51 million reflected in the IRS determination. (Docket No. 40, Owens Dec. Ex. 2.)

In a letter dated February 6, 2004, the sellers agreed to repay US Trust in the form of stock, as permitted under Section 5.7. The arrangement was explained as follows:

> Without in any way conceding or admitting the original $60 million purchase price was other than fair and adequate consideration for the convertible preferred shares or that CEI's settlement with the IRS constituted a 'final determination' within the meaning of § 5.7 of the SPA, the shareholders will abide by the court's statement concerning the final determination issue and honor the terms of § 5.7 of the SPA by paying the $9,000,000 'difference in the form of 117,028 share of CEI stock, valued 'in accordance with their actual fair market value as of the Closing.'

(Docket No. 40, Conan Dec. Ex. 1) US Trust representative, Norman Goldberg , in apparent agreement with its terms, signed the letter which relates in some detail the method by which the amount of stock required would be determined. [3]

---

[3] The per share value and requisite number of shares were calculated applying a proportionate 15 percent share reduction to the total equity value of the company and the shareholders' remaining stock shares as of March 1994 as follows: $174,000,000 (an expert valuation) x .85 (IRS adjustment) = $147,900,000 ("adjusted actual total equity value") - $51,000,000 (IRS reduced value of preferred total shares) = $96,900,000 ("adjusted actual" value of common stock) ÷ 1,260,000 (common shares outstanding) = $76.90 per share. $9,000,000 ÷ $76.90 = 117,028 shares. (Docket No. 40, Conan Dec. Ex. 1.)

Plaintiffs filed the instant suit for breach of Section 5.7 of the SPA on January 23, 2004. According to plaintiffs, they were not aware of US Trust's demand upon the sellers until June 2004, the terms of the agreement until September 2004, or CommutAir Committee's request for the demand until December of 2004. In June of 2004, in the sellers' Reply brief filed in regard to a motion to dismiss the instant claim, the sellers noted that they were "in discussions concerning the precise terms of the resolution." (Docket No. 11, Defs.' Reply Mem. p. 6 n.3.) [4]

The parties proceeded to trial in Henry I in February and April of 2004, and a decision was issued on September 3, 2004 in favor of plaintiffs on behalf of ESOP. It was determined that US Trust had engaged in a prohibited transaction under ERISA in executing the SPA. The "fair market value of the convertible preferred stock purchased by the ESOP on March 15, 1994 was $52.25 million (30% of the equity value plus enhancements)." Henry v. Champlain Enters., 334 F. Supp. 2d 252, 268 (N.D.N.Y. 2004). Plaintiffs were awarded $7.75 million (the difference between the $60 million payment for the stock and the determination of its actual value - $52.25 million - at the time of sale), interest, and attorneys' fees against US Trust. Henry v. Champlain Enters., 342 F. Supp. 2d 122, 123 (N.D.N.Y. 2004).[5] US Trust asserted that the receipt of stock from the sellers pursuant to Section 5.7 should be applied as a set-off to damages awarded against it, but no documentation of the transaction was submitted with the request and the set-off was denied. Id.

---

[4] The record does not reveal whether or not the agreement between the sellers and US trust was ever consummated. Apparently this will have to await another time, and another lawsuit, or perhaps consideration of the Second Amended Complaint.

[5] US Trust filed a timely appeal which remains pending at the Second Circuit. US Trust appeals the decision, the judgment awarding damages, and the summary judgment order underlying the decision. (Docket No. 204.)

## III. DISCUSSION

### A. Summary Judgment

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Silver v. City Univ., 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). The Court is "to grant

summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." Schwimmer v. Kaladjian, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing Anderson, 477 U.S. at 249-50).

## B. Standing

Plaintiffs' breach of contract claim is a derivative claim and was filed pursuant to N.Y. Bus. Corp. Law § 626 and the common law of trusts as plaintiffs are participants in ESOP and beneficiaries of ESOT. Sellers previously filed a motion to dismiss the claim for lack of standing. The claim filed pursuant to § 626 was dismissed. (Docket No. 14, Mem. Dec. and Order June 25, 2004 at 4.) However, it was determined that plaintiffs had standing to bring suit as participants pursuant to the common law of trusts. Id. As explained in Velez v. Feinstein, 87 A.D.2d 309, 314-315 (N.Y. App. Div. 1982):

> Where a claim exists in favor of the trust (properly speaking, of the trustees in their trust capacity) against third persons and the trustees are under a duty to enforce that claim and have improperly and unjustifiably failed to do so, the beneficiaries may bring a suit on behalf of the trust, analogous to stockholders' derivative suits on behalf of a corporation.

See also, Restatement (Second) of Trusts, § 282. [6]

"A derivative action is 'based upon two distinct wrongs: (1) [t]he act whereby the corporation was caused to suffer damage; and (2) the act of the corporation itself in refusing

---

[6] § 282 Suit in Equity by Beneficiary

(1) Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the property free of trust, the beneficiary cannot maintain a suit in equity against the third person, except as stated in Subsections (2) and (3).
(2) If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person.
(3) If the trustee cannot be subjected to the jurisdiction of the court or if there is no trustee, the beneficiary can maintain a suit in equity against the third person, if such suit is necessary to protect the interest of the beneficiary.

Restatement (Second) of Trusts § 282.

- 8 -

to redress the said act.'" Scalisi v. Fund Asset Management, L.P., 380 F.3d 133, 138 (2d Cir. 2004) (quoting Druckerman v. Harbord, 174 Misc. 1077, 22 N.Y.S.2d 595, 597 (N.Y. Sup. Ct. 1940)).

Plaintiff only has standing where trustees refuse to perform their duties or it may, rather unequivocally, be inferred that they would not perform them. "This will normally require either a showing of a demand on the trustees to bring the suit, and of a refusal so unjustifiable as to constitute an abuse of the trustee's discretion; or a showing that suit should be brought and that because of the trustees' conflict of interest, or some other reason, it is futile to make such a demand." Velez, 87 A.D.2d at 315. As plaintiffs concede, they did not demand that US Trust seek reimbursement from the sellers, therefore they must meet the futility requirement.

In the course motion practice involving the previous motion to dismiss and the issue of plaintiff's assertion of futility to excuse the failure of filing a demand, defendant revealed, by way of footnote, that US Trust had actually sought reimbursement from the sellers. However:

> [b]ecause . . . the current procedural posture of the case limit[ed] review to the proposed amended complaint only, defendants neither provide[d] evidence that such a demand was made, or by which entity. The effect of this demand, if properly established, on the issue of futility or otherwise [was] therefore . . . saved for another day.

(Docket No. 14, Mem. Dec. and Order June 25, 2004 at 6.)

"As long as the trustee is ready and willing to take the proper proceedings against such third persons, the beneficiary cannot maintain a suit in equity against them." Gebbie Foundation, Inc. v. Rogerson, 62 Misc.2d 944, 947 (N.Y. Sup. Ct. 1970) (citations omitted); Restatement (Second) of Trusts, § 282; Comment (a). Defendants have demonstrated that

US Trust did act to seek reimbursement pursuant to Section 5.7. After the statement in the October 2003 decision in <u>Henry I</u> that the IRS determination constituted a "final determination" for purposes of Section 5.7. of the SPA, CommutAir wrote to US Trust instructing them to seek reimbursement and US Trust responded in January 2004. US Trust took the action plaintiffs sought almost simultaneously with plaintiff's filing of the instant action. The assertion of futility requires an unwillingness to seek redress and is logically inconsistent with the fact that the trustee actually took the action that the beneficiaries desired. <u>See</u> <u>generally</u>, <u>Diduck v. Kaszycki & Sons Contractors, Inc.</u>, 737 F.Supp. 792, 801 (S.D.N.Y. 1990) (trustees's lack of consideration of bringing suit is not to be interpreted as unwillingness to do same.)

Plaintiffs have not provided case law demonstrating that the futility exception applies in the face of trustees or directors taking the action plaintiffs assert they would not take. Plaintiffs have not demonstrated that filing a demand upon US Trust to seek reimbursement from the sellers would have been futile. Therefore they lack standing to bring this contract action against the sellers. The sellers' motion for summary judgment on Count One will be granted.

### C. Damages

Considering that Count One will be dismissed because plaintiffs lack standing to bring suit, it is technically not necessary to address the issue of damages. However, since there seems to be some confusion as the effect of the ruling in <u>Henry I</u>, and this litigation continues as to other claims, it is appropriate to address the issue.

"The elements of a breach of contract claim in New York are (1) the existence of a contract, (2) plaintiff's performance, (3) breach by the defendant, and (4) damages."

- 10 -

Wechsler v. Hunt Health Systems, Ltd., 330 F.Supp.2d 383, 404 (S.D.N.Y. 2004) (citing Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996)).

Considering that plaintiffs were previously awarded significant damages on the facts of this case in Henry I, plaintiffs explained their pursuit of damages in the instant case as follows:

> [P]laintiffs recognize that to the extent that US Trust satisfies the judgment against it in Henry I relating to the $7.75 million overcharge, that payment would be credited against the amount due by sellers pursuant to Section 5.7 of the Stock Purchase Agreement. For example, if US Trust were to pay the full $7.75 million plus interest, then sellers would be liable for only $1.25 million plus interest.

(Docket No 39, Pl.'s Mem. Supp. Partial Summ. J., at 6 n. 4.)  This $1.25 million figure is no doubt the difference between the $9 million overcharge accepted by the IRS and the actual overcharge of $7.75 million.  At the time the complaint was filed, the IRS' determination that ESOP overpaid for the CommutAir stock had triggered the application of Section 5.7 of the SPA.  The trial and opinion in Henry I had not occurred.  The parties at that time proceeded in accordance with the $9 million overcharge figure pursuant to the IRS' acceptance of a $51 million value of the stock.

While the IRS determination of $51 million was "final" in the sense that it triggered the application of Section 5.7, the actual value of the stock purchased was $52.25 million based upon a determination after a bench trial in which all parties participated.  That factual determination binds the parties thereafter in this case.  The difference of $1.25 million does not constitute damage to plaintiffs.  The overcharge amount was determined to be $7.75 million.  That amount plus interest constitutes the amount of damages sustained by ESOP

as a result of US Trust's overpayment for the CommutAir stock. Plaintiffs assertion to the contrary is rejected.

## IV. CONCLUSION

Plaintiffs lack standing to bring a breach of contract claim against the sellers as they may not be excused from filing a demand against US Trust on grounds of futility.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for partial summary judgment on Count One is DENIED;

2. Defendants', Antony von Elbe, John Arthur Sullivan, Jr., and Ernest James Drollette's, motion for summary judgment on Count One is GRANTED;

3. The Amended Complaint is DISMISSED in its entirety. To the extent that the Second Amended Complaint survives defendant U.S. Trust Company of California, N.A.'s appeal, it shall not contain that which is currently listed as Count One of the Second Amended Complaint.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 25, 2005
Utica, New York.